UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

MITSUI SUMITOMO INSURANCE
COMPANY OF AMERICA,

                                    NO. CIV. S-06-2891 FCD GGH
          Plaintiff,

     v.                             MEMORANDUM AND ORDER

DELICATO VINEYARDS,

          Defendant.


                        ----oo0oo----


     This matter is before the court on defendant Delicato

Vineyards' ("Delicato") motion to dismiss for lack of subject

matter jurisdiction, pursuant to Federal Rule of Civil Procedure

12(b)(1), on the basis that there was no actual case or

controversy at the time plaintiff Mitsui Sumitomo Insurance

Company ("Mitsui") filed its complaint seeking declaratory

relief.  In the alternative, Delicato requests the court to

exercise its discretion under the Declaratory Judgment Act and

decline to assert jurisdiction over the matter.  Mitsui opposes

1

the motion.  For the reasons set forth below, defendant's motion
is DENIED.[1]

**BACKGROUND**

Delicato is a wine producer, with its principal place of
business located in Manteca, California.  (Pl.'s Comp., filed
December 22, 2006, ¶ 2).  Mitsui is an insurance provider, with
its principal place of business located in Warren, New Jersey.
(Id. at ¶ 1).  In 2006, Mitsui issued an insurance policy to
Delicato providing coverage for direct physical loss to covered
property, including Delicato wine, for a policy period of July 1,
2006 through July 1, 2007.  (Id. at ¶¶ 6-8).

In July 2006, a heat wave occurred in the Central Valley
region of California.  (Def.'s Mot. to Dismiss, filed February
26, 2007, at 2).  Delicato stored significant quantities of its
wines in two warehouses located in this region, the Klein
Brothers warehouse in Stockton and the Sierra Pacific warehouse
in Modesto.  (Pl.'s Comp. at ¶ 9).

On August 2, 2006, Delicato filed a claim with Mitsui,
alleging that it had suffered "[i]nventory spoilage of wine due
to weather (heat)," as a result of the July heat wave.  (Id. at ¶
12).  Mitsui acknowledged receipt of the claim on August 4, and
advised Delicato that it reserved its rights pending an
investigation into the claim.  (Id. at ¶ 13).  Mitsui then
retained A. Dolence & Associates ("Dolence") to adjust the claim,
and Thomas G. Eddy & Associates ("Eddy") to inspect and evaluate

---

[1]     Because oral argument will not be of material
assistance, the court orders this matter submitted on the briefs.
E.D. Cal. L.R. 78-230(h).

2

1  the wine in question and the circumstances surrounding the claim.

2  (Id. at ¶¶ 14, 17).

3      On October 31, 2006, Dolence forwarded to Delicato a copy of

4  the Eddy report, dated October 19, 2006.  (Id. at ¶ 19).  The

5  report indicated that only a small number of wines suffered

6  damage due to the elevated temperatures in the two warehouses,

7  and that the ambient temperatures inside the warehouses during

8  the July heat wave may not have been substantially higher than

9  the warehouses' typical ambient temperatures.  (Id. at ¶ 20-21).

10      On November 10, Delicato's counsel wrote to Dolence

11  regarding Delicato's claim.  (Declaration of James P. Wagoner in

12  Supp. of Mot. to Dismiss, filed February 26, 2007, Ex. C).  In

13  this letter, Delicato insisted that its claim be paid, and that

14  Mitsui's delay in resolving the claim was "outrageous" and had

15  caused substantial economic losses to Delicato.  (Id.).  Counsel

16  also accused Mitsui of "shopping" for coverage counsel who would

17  provide Mitsui with a favorable opinion.  (Id.).

18      Dolence responded to Delicato by letter dated November 14.

19  (Wagoner Decl., Ex D).  Dolence indicated that the matter had

20  been referred to counsel for a coverage opinion; that Mitsui was

21  not "shopping" for coverage counsel, as only one counsel had been

22  retained; and that the delay in resolving the claim was not

23  outrageous considering the time needed for Eddy to complete the

24  investigation.  (Id.).

25      In a letter dated November 30, Delicato's counsel responded

26  to Dolence, insisting that Mitsui's handling of the Delicato

27  claim was in violation of the California Code of Regulations and

28  that Delicato would report such violations to the State Insurance

3

1  Commissioner unless Mitsui responded immediately.  (Wagoner

2  Decl., Ex. E).  Delicato's counsel also reiterated his contention

3  regarding Mitsui's "efforts to 'shop' for coverage counsel."

4  (Id.).

5       In a letter dated December 4, 2006, Mitsui acknowledged its

6  receipt of Delicato's November 30 letter to Dolence.  (Wagoner

7  Decl., Ex. F).  Mitsui stated it strongly disagreed with

8  Delicato's characterization of its handling of the Delicato

9  claim.  (Id.).  Mitsui also informed Delicato that it was

10 completing its coverage analysis and would inform Delicato of its

11 coverage position within fourteen days.  (Id.).

12      Delicato's counsel responded on December 6.  (Wagoner Decl.,

13 Ex. G).  In his response, Delicato's counsel again criticized

14 Mitsui's handling of the Delicato claim and reasserted Delicato's

15 contention that Mitsui was violating state regulations.  (Id.).

16 The letter states that Delicato "has no confidence that its claim

17 is being handled in good faith, nor any confidence that its

18 claim, which is fully covered, will be honored."  (Id.).

19      Mitsui's counsel responded in a letter dated December 8.

20 (Wagoner Decl., Ex. H).  After defending its claims handling

21 practices, Mitsui informed Delicato that "there is an issue as to

22 the existence and extent of any damaged wine," as well as an

23 issue as to "whether any loss associated with the allegedly

24 damaged wine falls within the scope of the coverage provided" by

25 the Mitsui policy.  (Id.).

26      In a letter dated December 18, 2006, Delicato's counsel

27 responded, again arguing that Mitsui's handling of the claim was

28 severely deficient and in violation of state regulations.

4

(Wagoner Decl., Ex. I).  Delicato concluded the letter, stating:

> As to your comments concerning the coverage issues, please
> be advised that Delicato considers the claim fully covered;
> and in any event, because of the delays in processing the
> claim in violation of the Fair Claims and Settlement
> Practices Regulations, any remotely arguable coverage
> defenses which Mitsui Sumitomo might have had have now been
> waived and Mitsui Sumitomo is estopped to assert them.
>
> Delicato therefore demands that its claim be paid in full
> immediately.

(Id.).

In a letter dated December 19, 2006, Mitsui issued its
denial of coverage for the claim, contending that there was no
direct physical loss or damage to the vast majority of the
Delicato wines stored at the two warehouses.  (Pl.'s Comp. at ¶
24; Wagoner Decl., Ex. J).  Additionally, Mitsui cited a policy
exclusion for "loss or damage . . . caused by or resulting from
changes in or extremes of temperature."  (Wagoner Decl., Ex. J).

On December 22, 2006, three days after it issued its denial
of coverage, Mitsui filed the instant action, pursuant to the
Declaratory Judgment Act, 28 U.S.C. § 2201.  Mitsui seeks a
declaration that Delicato's claim does not involve, in
significant part, "direct physical loss to covered property" and
that, to the extent the claim does involve such loss, coverage is
precluded by the policy's exclusion for loss resulting from
changes in or extremes of temperature.  (Pl.'s Comp. at ¶¶ 28,
31-32).  The complaint invokes this court's diversity
jurisdiction.  (Id. at ¶ 3).

Delicato acknowledged receipt of the summons and complaint
on February 6, 2007.  Delicato then filed a state court action in
Stanislaus County Superior Court on February 23, 2007.  (Wagoner

Decl., Ex. K).  Delicato's state complaint asserts six causes of action: (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) fraud in the inducement, (4) interference with contract and/or prospective business advantage, (5) defamation, and (6) unfair business practices.  Mitsui is named as a defendant for all six causes of action.  Additionally, Delicato names Dolence and a California insurance brokerage (John Sutak Insurance Brokers, Inc.), two non-diverse parties, for the claims of interference with contract and defamation.

On February 26, 2007, three days after filing its state court action, Delicato filed the instant motion to dismiss Mitsui's declaratory relief complaint on the basis that there was no actual case or controversy at the time Mitsui filed its federal action.

**STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to raise, by motion, a defense that the court lacks "jurisdiction over the subject matter" of a claim.  Fed. R. Civ. P. 12(b)(1).  As "the federal courts are courts of limited jurisdiction," the party seeking to invoke the court's jurisdiction bears the burden of establishing its existence.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994) (citations omitted); <u>Stock West, Inc. v. Confederated Tribes</u>, 873 F.2d 1221, 1225 (9th Cir. 1989).

A motion to dismiss for lack of jurisdiction may attack the allegations in the complaint used to establish jurisdiction as insufficient on their face ("facial attack"), or may attack the existence of subject matter jurisdiction in fact ("factual

6

attack"). <u>Thornhill Publ'q Co. v. Gen. Tel. & Elec. Corp.</u>, 594
F.2d 730, 733 (9th Cir. 1979); <u>Mortensen v. First Fed. Sav. &
Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977).  If, as in this
case, the motion constitutes a factual attack, "no presumptive
truthfulness attaches to plaintiff's allegations, and the
existence of disputed material facts will not preclude the trial
court from evaluating for itself the merits of jurisdictional
claims." <u>Thornhill</u>, 594 F.2d at 733 (quoting <u>Mortensen</u>, 549 F.2d
at 891).  In fact, "[w]here a jurisdictional issue is separable
from the merits of a case,"[2] the court "may consider the evidence
presented with respect to the jurisdictional issue and rule on
that issue, resolving factual disputes if necessary." <u>Thornhill</u>,
594 F.2d at 733.

### ANALYSIS

Delicato contends that this court lacks jurisdiction because
this case did not satisfy Article III's case or controversy
requirement at the time Mitsui filed its complaint.
Alternatively, defendant asks this court to abstain from
exercising jurisdiction over the matter pursuant to <u>Brillhart v.
Excess Ins. Co. of America</u>, 316 U.S. 491 (1942), contending that
Mitsui's action is "reactive" and that exercising jurisdiction
would encourage forum shopping.

**A.   Subject Matter Jurisdiction under the Declaratory
      Judgment Act**

The Declaratory Judgment Act provides:

---

[2]    The parties do not dispute that the jurisdictional
issue raised by defendant is separable from the merits of
plaintiff's claims.

In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The Declaratory Judgment Act "was enacted to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication without having to wait until he is sued by his adversary."  Plum Creek Timber Co. Inc. v. Trout Unlimited, 255 F. Supp. 2d 1159, 1164 (D. Idaho 2003) (quoting Levin Metals Corp. v. Parr-Richmond Terminal Co., 799 F.2d 1312, 1315 (9th Cir. 1986)).

The Declaratory Judgment Act does not itself confer federal subject matter jurisdiction.  Staacke v. United States Secretary of Labor, 841 F.2d 278, 280 (9th Cir. 1988).  As such, there must be an independent basis for such jurisdiction.  Id.  Here, subject matter jurisdiction is properly predicated on diversity of citizenship.  See 28 U.S.C. § 1332.

A lawsuit seeking federal declaratory relief must first present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution.  Gov't Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1222-23 (9th Cir. 1998) (en banc) (citations omitted).  Declaratory relief may be granted so long as there is "a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 241 (1937).  In order for there to exist an actual case or controversy under the Declaratory

8

Judgment Act, the plaintiff must assert a real and reasonable apprehension that he will be subject to liability as a result of defendant's actions.  <u>Spokane Indian Tribe v. United States</u>, 972 F.2d 1090 (9th Cir. 1992).  However, in the context of insurance coverage cases, the Declaratory Judgment Act does not require that the insured have previously filed an action against the insurer.  <u>Haworth</u>, 300 U.S. at 240.

Delicato argues that there was no case or controversy at the time Mitsui filed its complaint, as any dispute over the extent of damaged wine or the scope of the policy's coverage "had not yet crystallized into a distinct, definite dispute."  Delicato asserts it did not challenge the findings of the Eddy report as to the extent of damage, and that there was no clear dispute as to the policy's scope of coverage.  Delicato argues that Mitsui did not even raise the possibility that coverage may be limited by the temperature exclusion until its letter of December 8, 2006, and did not definitively assert such a defense until its denial issued on December 19.  Delicato contends that its response to Mitsui's December 8, 2006 letter "did not directly address the 'changes or extremes in temperature' exclusion alluded to" by Mitsui and did not assert coverage specifically based upon an exception to that exclusion.  Delicato further argues that there was no time for Delicato to respond to Mitsui's denial of the claim before Mitsui filed its complaint.

In response, Mitsui points to four different letters Delicato's counsel sent to Mitsui and its representatives, in which Delicato repeatedly asserted that its claim should be paid and that Mitsui was estopped from challenging the policy's scope

of coverage.  The overall nature of the Delicato letters, with
Delicato's repeated assertions that Mitsui's handling of the
claim violated California's Fair Claims Settlement & Practice
Regulations, and threats to commence an action with the State
Insurance Commissioner, support Mitsui's reasonable apprehension
of litigation.  See, e.g., Chesebrough-Pond's, Inc. v. Faberge,
Inc., 666 F.2d 393, 397 (9th Cir. 1982) (threat of filing an
opposition proceeding with the Patent Trademark Office held
sufficient to create a real and reasonable apprehension of
litigation, even when no lawsuit was threatened);
Freecyclesunnyvale v. Freecycle Network, Inc., No. C 06-00324,
2006 WL 870688 (N.D. Cal. Apr. 4, 2006) (a real and reasonable
apprehension of litigation was created by a letter that
"implie[d] a harsh response for failure to cease usage," even
though a lawsuit was not threatened).

       A specific threat of imminent litigation is not necessary to
show that the declaratory relief plaintiff held a real and
reasonable apprehension that he would be subject to liability.
Delicato's continued assertions that its claim was valid and
should immediately be paid in full, and that the policy's
coverage included any damage caused by the elevated temperatures
in the warehouses was enough to create a real and reasonable
apprehension of litigation when Mitsui issued its denial.  This
question presents a "substantial controversy, between parties
having adverse legal interests, of sufficient immediacy and
reality to warrant the issuance of a declaratory judgment."  See
Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270,
273 (1941) (finding an actual controversy between an insurance

company and an insured where insurance company sought declaratory
relief after a third-party filed a state action against the
insured).  Accordingly, the court finds that Mitsui's complaint
presents an actual case or controversy within the meaning of
Article III and the Declaratory Judgment Act.

### B.   Discretionary Dismissal

Alternatively, Delicato requests that the court exercise its
discretion under the Declaratory Judgment Act not to hear this
action pursuant to the factors cited in Brillhart v. Excess Ins.
Co., 316 U.S. 491 (1942), and Government Employee Ins. Co. v.
Dizol, 133 F.3d 1220 (9th Cir. 1998).  Under Brillhart and Dizol,
even when subject matter jurisdiction exists, the district court
may, in the exercise of its discretion, decline to entertain the
action.  Dizol, 133 F.3d at 1223 (noting that the Declaratory
Judgment Act is "deliberately cast in terms of permissive, rather
than mandatory, authority").  "The Declaratory Judgment Act
provides that a court 'may declare the right and other legal
relations of any interested party' . . . not that it must do so."
MedImmune, Inc. v. Genentech, 127 S. Ct. 764, 776 (2006) (citing
28 U.S.C. § 2201(a)) (emphasis in original).  Accordingly,
district courts retain "unique and substantial discretion in
deciding whether to declare the rights of litigants."  Id.
(citing Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995)).

In Brillhart, the Supreme Court held that a federal court
sitting in diversity, presiding over an action for declaratory
relief, may exercise its discretion to dismiss the action where
another suit is pending in state court, between the same parties,
and presenting the same issues of state law. 316 U.S. at 495.

11

However, the Ninth Circuit has noted that "there is no presumption in favor of abstention in declaratory actions, generally, nor in insurance coverage cases specifically." Dizol, 133 F.3d at 1225.  A court's decision to abstain from entertaining such a suit must be based on more than "whim or personal disinclination." Id.

The Ninth Circuit has concluded that the factors articulated in Brillhart remain the "philosophic touchstone for the district court." Id.  The relevant factors for the district court to consider in deciding whether to abstain from exercising jurisdiction are: (1) avoiding needless determination of state law issues, (2) discouraging forum shopping by declaratory relief plaintiffs, and (3) avoiding duplicative litigation. Id. (citing Continental Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371-73 (9th Cir. 1991) (overruled on other grounds by Dizol, 133 F.3d 1220)).  If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.  Id.  However, the pendency of a state court action does not, by itself, require a district court to refuse federal declaratory relief.  Id. Nonetheless, federal courts should generally decline to entertain reactive declaratory actions.  Id.

### 1.   Avoiding Needless Decisions of State Law

Delicato argues against the exercise of jurisdiction over the Mitsui complaint, as "Mitsui's coverage position as well as the factual questions regarding the scope of Delicato's loss can and clearly will be resolved in [the state court] action."

12

(Def.'s Mot. to Dismiss, filed February 26, 2007, at 22).  When
the sole basis for federal jurisdiction is diversity of
citizenship, "the federal interest is at its nadir and the
Brillhart policy of avoiding unnecessary declarations of state
law is especially strong."  Robsac, 947 F.2d at 1371.  However,
the instant dispute does not require this court to decide novel
questions of state law.  To the contrary, the parties' dispute
requires the interpretation of the Mitsui policy.  While this
analysis is governed by state law, the principles of contract
interpretation are well settled, and this court is an appropriate
forum to adjudicate this matter.  See Dizol, 133 F.3d at 1225
("We know of no authority for the proposition that an insurer is
barred from invoking diversity jurisdiction to bring a
declaratory judgment action against an insured on the issue of
coverage.").

## 2. Avoiding Forum Shopping

     Delicato urges this court not to exercise jurisdiction over
the Mitsui complaint, contending that Mitsui forum-shopped by
rushing to file its complaint in this court in order to avoid
being named in a non-removable state court action.  (Def.'s Mot.
at 16).  Delicato argues that the Mitsui complaint falls within
the type of "reactive" litigation that the Ninth Circuit has
cautioned exercising jurisdiction over.  See Robsac, 947 F.2d
1367.

     The Ninth Circuit has explained that a "declaratory judgment
action by an insurance company against its insured during the
pendency of a non-removable state court action presenting the
same issues of state law is an archetype of what we have termed

13

'reactive' litigation." Robsac, 947 F.2d at 1372-73.  If there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire suit should be heard in state court.  Dizol, 133 F.3d at 1225.

However, while Dizol cautions against entertaining reactive declaratory actions, the pendency of a state court action does not require a district court to dismiss a declaratory relief action that was filed before the state court action.  The instant case is distinguishable from Robsac and other cases cited by Delicato, as those cases involved a federal action filed *after* a state court action was already pending.  While Robsac court indicated that the federal suit would have been reactive even if it had been filed first, this conclusion was dictum as the federal suit in that case had not been filed first.  See Aetna Casualty & Surety Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir. 1992) (upholding a district court's decision to assert jurisdiction when there was no state court action pending at the time the federal declaratory relief action was filed).

Just as Delicato argues that a "first-to-file" rule should not be mechanically applied, there is also no requirement that any pending state court action requires dismissal of a first-filed federal action.  Delicato argues that the short timeframe between Mitsui's issuance of its denial and its filing of the instant action indicates that Mitsui anticipated that Delicato was about to file a non-removable state court action.  However, the court finds no indication within the correspondence between Delicato and Mitsui that a non-removable state court action,

14

naming non-diverse parties, was imminent.  While there was a

clear dispute between the parties and Mitsui had a reasonable

apprehension of litigation, there was no indication that Delicato

would be filing a non-removable state court action immediately.

The court finds that Mitsui's suit was not "reactive" and that

asserting jurisdiction over the suit would not encourage forum

shopping in violation of Brillhart.

### 3.  Avoiding Duplicative Litigation

Delicato argues that this court should not exercise

jurisdiction over Mitsui's complaint, "as all the legal issues

would be best and most economically determined in the state court

action, the forum with the closest connection to this cases."

(Def.'s Reply, filed March 26, 2007, at 12).  It is true that

there may be some overlap between the issues determined by this

court and the state court, as the state court may need to

determine the validity's of Mitsui's denial in order to determine

the validity of Delicato's breach of contract claim.  However,

the state court action involves several causes of action that do

not involve a determination of the same issues of policy

coverage, such as Delicato's claim for defamation against the

non-diverse defendants.  Accordingly, this action will not be

duplicative of almost all of the issues to be determined in the

state court action.[3]

---

[3]  Delicato's counsel filed a Supplemental Declaration in
support of its motion to dismiss on April 23, 2007, indicating
that Mitsui filed a cross-complaint against Delicato in the state
court action, seeking declaratory relief similar to that sought
in the instant case.  The court declines to consider this late
filing.  Even if the court were to consider the existence of a
(continued...)

**CONCLUSION**

Based upon the foregoing analysis, in the totality of the circumstances, the _Brillhart_ factors do not weigh in favor of the court's abstention from exercising jurisdiction in this case. There is no evidence that plaintiff has filed this case as "reactive litigation" in an effort to forum shop.  Further, while this case involves issues of state law which were subsequently brought in state court by defendant, subsequent state court filings cannot be solely dispositive of the _Brillhart_ inquiry as such an analysis would necessitate abstention from jurisdiction in almost all declaratory relief actions brought into this court on the basis of diversity jurisdiction and would encourage forum shopping and "reactive litigation" by parties seeking to litigate their claims in state court.  As such, the court will exercise its discretion to assume jurisdiction over the instant declaratory judgment action.  Therefore, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED: May 10, 2007

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

---

[3](...continued)
cross-complaint in the state court action, it would not impact the court's analysis of the _Brillhart_ factors.